## CROSBY COUNTY CATTLE CO. v. DAVIS et al.

### No. 3419.

Court of Civil Appeals of Texas. Amarillo.

May 28, 1930.

Rehearing Denied June 18, 1930.

H. G. Smith, of Post, and Dean & Perkins, of Fort Worth, for appellant.

Bean & Klett, of Lubbock, T. L. Price, of Tahoka, and Lloyd A. Wicks, of Ralls, for appellees.

RANDOLPH, J.

This suit was filed in the district court of Garza county by appellee against appellant to recover a brokerage commission claimed by appellee against appellant for the sale of certain lands belonging to appellant and situated in Garza and Crosby counties, in the sum of $2,777.50.

The defendant answered by general demurrer, general denial, a verified plea denying a listing of lands for sale; pleas in estoppel setting out that, if appellant did list its lands, the appellee had violated instructions to him in not submitting offers to appellant; that the appellant and purchaser closed the sale without appellant knowing that appellee was instrumental in securing such purchaser, and, further, that appellant would not have made the sale had it known that appellee would claim a commission thereon, and that it would not have paid another broker a commission on the sale of a part of the land had it known that appellee would claim a commission therefor. Appellant further impleaded two others, and asked judgment over in the event of judgment against it. These two parties thus made defendant pleaded their privilege to be sued in the county of their residence, which pleas were sustained by the trial court. The case thereupon went to trial between appellant and appellee, and resulted in a verdict on special issues and upon which verdict the court rendered judgment in favor of appellee in the sum of $3,082, with interest from date thereof at 6 per cent. per annum.

The jury found, in answer to special issues submitted to them, that the plaintiff Tom Davis was the procuring cause of the sale of the land to Mrs. Georgia Beal Barton by the defendant Crosby County Cattle Com-

pany; that the reasonable value of the services rendered by plaintiff in causing the sale to Mrs. Barton of the land described in deed dated September 15, 1925, was $1,961.50; that plaintiff was the procuring cause of the sale of the land described in the deed dated September 30, 1925, and that such services were reasonably worth $505.92; that the plaintiff did not agree to divide his commissions with J. Ed. McLaughlin; that the plaintiff did not know that said defendant company paid said McLaughlin a commission by reason of such sale, or that McLaughlin was claiming a commission therefor; and that defendant would have paid said McLaughlin had it known that it would have to pay a commission to another for the sale of the same lands.

There are, substantially, only two questions presented on this appeal; the appellant contends that: (1) A broker is entitled to a commission for the sale of properties of another only when he proves the employment by the other party, and that the appellee has failed to prove his employment; (2) Sidney Webb, as president of the corporation, was not authorized to employ appellee to sell appellant's lands.

■ These questions are questions of fact for the consideration of the jury. They having answered the issues upon those questions adversely to appellant's contention, we have no power to set their findings aside if they were based upon evidence. It depends, therefore, upon the evidence introduced in the case as to whether the proof warrants the findings.

A letter written by Sidney Webb, the president of the appellant, dated September 22, 1924, is as follows:

"I have just received your letter of the 19th and will say I wrote you that we were anxious to sell the Z-L land and we want to begin on the south side and take clean as we go or on the north side as we do not want to sell through the middle. Now, if you can get any offers on the land there either in sections or half sections, you write me at once and I will make you prices on the particular sections you want and deal with you direct or you can see McGloffin (McLaughlin) at Ralls, who can also make you price, or I will deal with you direct if you prefer. Now we do not want to spot this land up but sell clean as we go and will make better price if you can handle that way. Now let me hear from you right away if you want to do anything and send your letter to Mineral Wells. Yours truly, Sidney Webb."

The reply of appellee Davis is as follows:

"I am in receipt of your letter of the 22nd inst. Will say it would suit me to deal direct with you but it is *imbarising* to show a friend a tract of land and tell him if he liked it I would get him prices and *turms*. If you will send me map I will look over the land on the border and send you list of the land I think I can sell. I can sell in 160 acre tracts easier than by 320 or 640. I also think Mc would require me to take part of com. and him part if I handle it I want to be in a position to make contract with the buyer and get some money put up to be held in escrow pending deed from you.—Hoping to hear from you soon and do some business, I am, yours truly, Tom Davis."

Webb replied to it by acknowledging receipt of the above, and tells appellee again to get in touch with McLaughlin at Ralls, "for by doing this there will be no mixup on the sale of the land." On the day that Webb wrote to Davis to get in touch with McLaughlin he also wrote to McLaughlin, sending the letter from Davis and telling McLaughlin he was writing to Davis to see him, McLaughlin.

The evidence in this case shows that the Crosby County Cattle Company owned a large amount of land. Webb's letter of September 22d shows that there was quite a lot of the land, that he stated that they were anxious to sell the Z-L land, and that they wanted to begin on the south side and take clean as they went or begin on the north side, and it did not want to sell any in the middle. McLaughlin testified that Davis came up to see him in answer to a letter he had written on October 3d, and that he showed Davis the maps of the lands and gave him prices, etc.. The evidence of Tom Davis further shows that he showed quite a lot of the land belonging to the Crosby County Cattle Company, and the evidence further shows that Mrs. Georgia Beal Barton, daughter of Beal Sneed, bought seven or more sections of the land. Webb authorized Davis to sell section 17 and agreed to pay a commission. Webb signed the contract of sale for section 17. Webb corresponded with McLaughlin about sales of the land. McLaughlin testified that Webb, president, or Price, vice president of the company, listed the lands with him, and further testified that he sold some of the lands, his testimony being as follows:

"Beal Sneed called me over the 'phone and talked to me about the land and then came to Ralls to see me about this particular land. * * * He asked me if I could go to Ft. Worth with him but I told him I could not for a week or ten days because I could not get off right then to go down to Ft. Worth. We later did go to Ft. Worth. I met him at the Farmers & Mechanic's National Bank and I talked to him about the particular lands. * * * With Mr. Guy Price, and then we called Mr. Webb and that sale was finally made to Sneed and the contract entered into."

■ We think that the authority in Webb to employ brokers to sell is sufficiently presented for submission to the jury. Webb did all the things enumerated above, and many others which it is not necessary to recite here

and then he, in behalf of the company, signed up the deeds to Mrs. Barton, thereby carrying out the transactions he had started, and the company accepted the proceeds of the sales and the benefits of his acts and paid McLaughlin a commission and also paid Davis a commission on the same land, section 17.

The acquiescence on the part of the officers of the corporation in acquiescing in the acts of a particular nature, with actual or constructive knowledge thereof, whether within or without the scope of his ordinary powers, binds the corporation.

"The general manager or agent of a corporation, unless restricted, has ample authority to employ necessary clerks, servants, laborers, etc., and appoint necessary agents and agree upon their compensation." 3 Fletcher on Corporations, § 2104.

Tom Davis was instructed to get in touch with McLaughlin and from McLaughlin obtain prices, terms, etc., at the instigation of Webb, and, since the jury found that he was the procuring cause of the sale, he earned a commission, notwithstanding the fact that the land was listed with other agents, and it was not necessary for him to notify appellant that he had found a purchaser—the appearance of McLaughlin in the transaction being sufficient notice of the appellee's connection with the sale because he had been instructed to make that connection.

Webb being the president and general manager of the appellant corporation in its business transactions, he was the corporation. Sealy Oil Mill & Mfg. Co. v. Bishop Mfg. Co. (Tex. Com. App.) 235 S. W. 850.

There is no question but what the appellee was the procuring cause of the sale of the land to Mrs. Barton—there is and can be no controversy on that score.

If the agent is authorized to make a sale and a purchaser is procured by him, it is of no consequence that the owner did not know the fact and closes the sale himself, neither does the fact that the land was listed with several agents have anything to do with the right of the broker who procured the sale to his commission. The true test always is as to who was the procuring cause of the sale, and in this instance, as stated, the jury found that Davis was such procuring cause and the evidence does not conflict with this. Where an owner lists his land with several agents, he takes the risk of having to decide at his peril to whom he shall pay the commission. Ramsey v. Gibson (Tex. Civ. App.) 185 S. W. 1025; Stephenson v. Jackson (Tex. Civ. App.) 128 S. W. 1196; Masters v. Hunt (Tex. Civ. App.) 197 S. W. 219; Goodman v. Henck (Tex. Civ. App.) 295 S. W. 349.

The evidence clearly showing that the appellee was the procuring cause of the sale, that he had the authority to make the sale, that Sidney Webb as president and manager was authorized to appoint the appellee as such agent to sell, we affirm the judgment of the trial court.